NOT DESIGNATED FOR PUBLICATION

No. 114,174

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DEQUALYN A. SHAFFER,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; JOHN J. KISNER, JR., and JAMES R. FLEETWOOD, judges. Opinion filed August 19, 2016. Reversed and remanded with directions.

*Richard Ney*, of Ney & Adams, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before MALONE, C.J., GREEN and GARDNER, JJ.


*Per Curiam*: This direct appeal by Dequalyn A. Shaffer raises multiple issues related to his bench trial on one count of rape. We do not agree with Shaffer's contention that the State violated his statutory and constitutional rights to a speedy trial. But we do agree that the district judge who conducted the bench trial on Shaffer's rape charge should have recused where that same judge had granted Shaffer's counsel's motion to withdraw based on a conflict reportedly caused by Shaffer's credibility. Because we are compelled to reverse and remand on that basis, we find it unnecessary to reach other issues Shaffer briefs.

1

*Procedural and factual background*

In January 2013, Dequalyn A. Shaffer was charged with one count rape, a severity level 1 person felony. At his preliminary hearing, Shaffer was represented by Mark Orr from the Sedgwick County Public Defender's Office. Although represented by Orr, Shaffer filed several motions including a "Motion For Fast and Speedy Trial."

Later, when represented by Charles O'Hara, Shaffer waived his right to a jury trial. A hearing on the waiver was held on February 3, 2014, before Judge John J. Kisner, Jr. Although represented by O'Hara, Shaffer continued to file various pro se motions, including a claim of ineffective assistance of counsel. O'Hara filed a motion to withdraw as Shaffer's attorney, which was granted.

Jason Smartt, Assistant Public Defender for Sedgwick County, then began representing Shaffer. Smartt filed a motion to withdraw Shaffer's waiver of jury trial, and Judge Ben Jamin L. Burgess held a hearing on the motion at which Shaffer, Shaffer's mother, and O'Hara testified. Judge Burgess denied the motion, finding Shaffer knowingly and voluntarily waived his right to a jury trial.

A few days before the trial date, Smartt requested a continuance of the bench trial because he believed a conflict with his client had arisen and he wished to withdraw. A hearing on that motion was held on December 11, 2014. Smartt, Mark Rudy (Smartt's supervisor), Mandee Schauf (the State's attorney), and Judge Kisner met in a chambers conference that was not recorded. After their conversation, the court made a record of what had occurred:

> "THE COURT:  All right. Mr. Smartt, I'll make a record of what sort of happened in chambers, if that is okay?

2

"MR. SMARTT: I hope you won't make too much of a record of what happened in chambers.

"THE COURT: I'll be careful. . . . The defense counsel, Mr. Smartt and Mr. Rudy from Mr. Smartt's office along with Ms. Schauf [on behalf of the State], visited with me in chambers a little earlier today. The defendant is requesting a continuance. Mr. Smartt has indicated that he believes a conflict now exists in the case and that Mr. Shaffer needs new counsel. The State has objected to that or at least the State was concerned about that and I'll let them clarify that in a bit if they would like, but the State agreed that the Court should meet with Mr. Rudy and Mr. Smartt privately to discuss the nature of the conflict. And so Ms. Schauf then stepped out and the Court met briefly with Mr. Smartt and Mr. Rudy. Those attorneys described the nature of the conflict, the timing involved, and based upon the information provided to the Court, the Court has determined that they do, in fact, that there does appear to be a conflict and a conflict of a nature that would generally require the Court to appoint new counsel to represent Mr. Shaffer. And the Court also notes that it is a conflict that has just recently come to light and not something that would have been discoverable or known to counsel until very recently. And I'm not sure if it probably in the last week to ten days or so; is that a fair time table, Mr. Smartt?

"MR. SMARTT: Certainly the most—certainly became more urgent as of today."

The district court granted the continuance and appointed Pamela Parker from the Sedgwick County Public Defender Conflict Office as Shaffer's new counsel.

Shaffer's bench trial began on February 26, 2015, with Judge Kisner presiding. At the bench trial, Parker requested a continuance because she had recently been appointed and wanted to discuss a potential witness with Shaffer's prior counsel, Smartt. Parker said she had been unsuccessful in obtaining the necessary information from Smartt—he had informed her that because he had conflicted off the case he could not share any information with her. Judge Kisner denied the request, stating Smartt would be in his

3

courtroom the next day and he would like to hear from him with regard to why a conflict of interest existed. Judge Kisner proceeded with the bench trial.

The next day, after the State rested, Parker asked the district court to revisit the issue regarding Smartt. A recess was taken, and when the court was back on the record, Smartt and Mark Rudy, also with the public defender's office, were both present. Parker then moved for Judge Kisner to recuse himself. After some discussion, Judge Kisner stated he had no independent recollection of the underlying conflict and denied the motion, stating: "I think the cleanest way to do this, and based upon where I'm at, is that I don't have knowledge right now that makes me believe that I need to recuse myself." Judge Kisner referred the parties to Chief Judge James Fleetwood for an independent review of the recusal matter and continued the remaining portion of the bench trial to a later date.

Chief Judge Fleetwood conducted an evidentiary hearing. Based on the testimony of Smartt and Rudy and the unchallenged statement of Judge Kisner that he had no independent recollection of the matter, Chief Judge Fleetwood denied the motion to recuse as premature, noting the motion would be appropriate if and when Judge Kisner recalled the events that gave rise to Smartt's conflict.

The bench trial before Judge Kisner resumed on April 8, 2015. After hearing testimony, including Shaffer's testimony, and reviewing the record, Judge Kisner found Shaffer guilty of one count rape, noting he had considered, among other factors, the "credibility of the witnesses" and "did not find the defendant's testimony to be consistent or believable." The district court sentenced Shaffer to 620 months' imprisonment, followed by a lifetime of postrelease supervision. Shaffer timely appeals.

4

*Did the State deny Shaffer his statutory or constitutional right to a speedy trial?*

We first address Shaffer's argument that the State violated his statutory and constitutional rights to a speedy trial, warranting reversal of his conviction and dismissal of his case with prejudice.

*Statutory speedy trial right*

Whether the State violated a defendant's statutory right to a speedy trial is a question of law subject to de novo review. *State v. Brownlee*, 302 Kan. 491, 506, 354 P.3d 525 (2015). To the extent this appeal requires interpretation of K.S.A. 22-3402, we exercise unlimited review. *State v. Sievers*, 299 Kan. 305, 307, 323 P.3d 170 (2014).

At the time Shaffer committed the offense, our speedy trial statute, K.S.A. 2012 Supp. 22-3402(a), provided in relevant part:

> "If any person charged with a crime and held in jail solely by reason thereof shall not be brought to trial within 90 days after such person's arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant or a continuance shall be ordered by the court under subsection (e)."

Shaffer was arraigned on February 7, 2013. At the time of his arraignment, Shaffer was not held *solely* on the present case, therefore the 90-day time limit provided in K.S.A. 2012 Supp. 22-3402(a) did not begin on the same date as his arraignment. Shaffer was on parole when he was originally charged in this case, and although the record does not reflect the start date of his parole hold, the parties concede the parole hold was up on July 18, 2013. The parties further agree that as of that date, Shaffer was held solely on his rape case. Accordingly, his statutory speedy trial time began to run then.

5

The State alone is responsible for bringing an accused person to trial within the statutory time limit, and the accused does not have to do anything to protect his or her speedy trial right. *Sievers*, 299 Kan. at 307-08. But if trial is delayed "as a result of the application or fault of the defendant," the delay is not counted against the State's 90 days. K.S.A. 2012 Supp. 22-3402(a); see *Sievers*, 299 Kan. at 309. Time will also be charged to a defendant if he acquiesces—does more than silently assents—to a continuance, no matter who requests it. *State v. Vaughn*, 288 Kan. 140, 145, 200 P.3d 446 (2009). Finally, the actions of defense counsel in requesting continuances are generally attributed to the defendant unless the defendant timely voices his disagreement with those actions. See 288 Kan. at 144; *State v. Hines*, 269 Kan. 698, 703-04, 7 P.3d 1237 (2000).

Shaffer argues that his statutory right to a speedy trial was violated, particularly because some of the decisions regarding continuances were made in his absence and he was unable to object, citing *Brownlee*, 302 Kan. at 507. As stated in *Brownlee*, "'K.S.A. 1998 Supp. 22-3405, as well as the Sixth Amendment's Confrontation Clause and the Due Process Clause of the Fourteenth Amendment, require the defendant's presence at every critical stage of a trial. [Citations omitted.].' *State v. Bell*, 266 Kan. 896, 919-20, 975 P.2d 239, *cert. denied* 528 U.S. 905." 302 Kan. at 507.

Effective July 1, 2012, the legislature amended our speedy trial statute to eliminate the remedy of reversal for statutory speedy trial violations, stating:

> "If a defendant, or defendant's attorney in consultation with the defendant, requests a delay and such delay is granted, the delay shall be charged to the defendant regardless of the reasons for making the request, unless there is prosecutorial misconduct related to such delay. If a delay is initially attributed to the defendant, but is subsequently charged to the state for any reason, such delay shall not be considered against the state under subsections (a), (b) or (c) and shall not be used as a ground for dismissing a case or for reversing a conviction unless not considering such delay would result in a violation of

the constitutional right to a speedy trial or there is prosecutorial misconduct related to such delay." K.S.A. 2012 Supp. 22-3402(g).

This statute was in effect on the date of Shaffer's offense—January 20, 2013. *Brownlee* found that the two sentences in this statute are not contingent upon one another, thus: "Absent prosecutorial misconduct or a violation of a defendant's constitutional speedy trial right, the second sentence also is applicable to any factual situation in which a delay initially charged to the defense is subsequently charged to the State." 302 Kan. at 510-11; see *State v. Combs*, No. 111,717, 2015 WL 9286790, at \*2-3 (Kan. App. 2015) (unpublished opinion), *petition for rev. filed* January 14, 2016.

Therefore, even if Shaffer is correct that numerous days charged to him should have been charged to the State, that delay "shall not be used as a ground for dismissing a case or for reversing a conviction." K.S.A. 2012 Supp. 22-3402(g). The legislature "which created the statutory right, has decided to eliminate the remedy for its violation in certain circumstances." *Brownlee*, 302 Kan. at 511.

Shaffer contends he falls within the "unless" clause of the statute, which provides delay "shall not be used as a ground for dismissing a case or for reversing a conviction unless not considering such delay would result in a violation of the constitutional right to a speedy trial or there is prosecutorial misconduct related to such delay." K.S.A. 2012 Supp. 22-3402(g). Shaffer does not allege prosecutorial misconduct, but he does allege the continuances violated his constitutional right to a speedy trial, citing the Sixth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights. As we analyze below, Shaffer fails to show his constitutional speedy trial right was violated, thus his statutory speedy trial claim also fails.

7

*Constitutional speedy trial right*

The substance of Shaffer's speedy trial argument is difficult to follow because he filed numerous motions throughout this case and does not specify which time he believes is excludable or should have been charged to the State. Shaffer, however, never argues the continuances were critical stages. Instead he argues he had a right to a speedy trial and he was not present to object to any continuances. Because Shaffer fails to argue that he was absent from critical stages of his proceeding, we deem that issue waived and abandoned. See *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011).

Shaffer mentioned his constitutional right to a speedy trial in a pro se motion filed on March 12, 2013. But when Shaffer's counsel argued his speedy trial rights, his argument was based solely on a *statutory* right to a speedy trial. In its ruling, the district court denied his motion based on the statutory language. Nothing in the record indicates any constitutional speedy trial argument was ever raised or considered. Therefore, we find Shaffer's constitutional claim has been raised for the first time on appeal.

Constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). See Rule 6.02(a)(5) (2015 Kan. Ct. R. Annot. 41) (requiring an appellant to explain why an issue not raised below should be considered for the first time on appeal); *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014) (warning that Rule 6.02(a) means what it says and that litigants ignore it at their own peril). Because Shaffer has failed to argue why an exception to this rule should apply here, we find this issue waived and abandoned. *Godfrey*, 301 Kan. at 1043-44. Accordingly, both Shaffer's constitutional speedy trial claim and his statutory speedy trial claim fail.

*Did the district court err by denying Shaffer's motion to recuse Judge Kisner?*

We next address Shaffer's claim that he was denied a fair trial because of Judge Kisner's lack of impartiality. Specifically, Shaffer claims Judge Kisner was privy to Smartt's stated belief that Shaffer had credibility issues which created an ethical problem for Smartt and caused him to seek to withdraw as Shaffer's attorney. That revelation allegedly biased Judge Kisner against Shaffer's credibility, which was the crucial issue in Shaffer's rape case subsequently tried to Judge Kisner in a bench trial.

*The bench trial*

Shaffer's bench trial began on February 26, 2015, with Judge Kisner presiding. At the beginning of the hearing, Shaffer's counsel, Pamela Parker asked for a continuance. She indicated she had contacted Shaffer's prior counsel, Jason Smartt, about a potential witness. Parker stated, "[W]hen I contacted Mr. Smartt to find out more about this witness and what that witness may have to offer in terms of helping Mr. Shaffer, he told me that because he had conflicted off of the case he can't share any information with me." The district court denied the request for a continuance but stated Smartt would be in Judge Kisner's courtroom the following morning on another matter. The district court further stated, "And I don't want to continue this too long, but what I'll do is once we get to the point—I would like to hear actually from Mr. Smartt maybe on the issue with regard to why a conflict of interest. And I don't know the basis of the conflict . . . ."

The State then informed Judge Kisner:

"You were the Court that heard the motion to reappoint counsel and because you deal with some cases and some attorneys but you did conduct an in chambers hearing with Mr. Smartt and actually Mr. Rudy the State was excluded from that here in chambers conversation, and then you came back out on the record, made what record you could without disclosing what was discussed in chambers. So I think once the Court talks

9

with Mr. Smartt you might be reminded of what the conflict was that precipitated him being removed."

Judge Kisner responded, "And I honestly do not have an independent recollection of that. I mean, I recognize Mr. Shaffer's name because it has been on the docket a number of times." The district court denied the requested continuance and conducted the bench trial until the evening recess.

### The motion to recuse

The bench trial reconvened the following day. After the State rested and the district court denied Shaffer's motion for judgment of acquittal, Parker requested an update regarding "the Mr. Smartt issue." The district court took a short recess and then reconvened with both Smartt and Rudy present. Parker then moved for Judge Kisner to recuse himself and recapped why Smartt and Rudy were necessary for the hearing. She indicated Rudy had expressed concerns that if the judge did not recuse himself, the case would "be coming back." Judge Kisner repeated that he did not recall the original conversation:

> "I still have no, I'm somewhat embarrassed, but I guess the reality of it is, I have no independent recollection of the conversation with Mr. Rudy and Mr. Smartt at this time with regard to the need for this continuance. I have a vague recollection of them being in my office discussing something with me, and it was the nature of a situation where the DA wasn't there, that would be unusual. That's something that I have seldom done and I believe in this case it was done with the agreement of the District Attorney. . . .
>
> ". . . This was more of a scheduling issue and determining we had to continue the case because of a conflict. The nature of the way I handle conflicts is not—I generally do not get into details of the conflict if the Public Defender's Office tells me there is a conflict. . . . I think we basically take the public defender's word for it that there is a conflict. I think this was done more because of the scheduling part of it."

Judge Kisner then asked Rudy if that was a fair assessment of why that conversation had occurred. Parker interjected that "[]it was a time issue," but said, "We disclosed the conflict and you're right, you normally don't ask what the conflict is, but because it was set for the following Monday, you wanted to know why." We note, however, that Parker was not a party to the December conversation in which Smartt revealed the conflict to Judge Kisner. Rudy then concurred with the judge's assessment.

Judge Kisner stated he had no independent recollection of the underlying conflict, denied the motion, referred the parties to Chief Judge James Fleetwood for an independent review of the recusal matter, and continued the remaining portion of the bench trial to a later date.

*The recusal hearing with Chief Judge Fleetwood*

Chief Judge Fleetwood held a hearing on the motion to recuse on March 2, 2015. Because of the importance of the testimony to the issue on appeal, we set it out at some length. At the hearing, Smartt and Rudy testified about their in camera conversation with Judge Kisner. Smartt testified that on December 3, 2014, and again on December 10, he had a discussion with Shaffer during which Shaffer shared "information that wasn't consistent with what he had shared with [Smartt]" about two previously stated theories of defense. Smartt said he discussed with Shaffer that this might require Smartt to present any direct testimony of Shaffer in a narrative fashion, or to conflict off the case. Pamela McLemore, Shaffer's attorney at the hearing, asked, "Essentially you did not believe the second theory of defense?" Smartt replied, "My understanding [was] there had been assertions to at least two prior defense attorneys . . . [t]hen myself all that were consistent. At this late stage in October and December, information was coming that was not consistent with what I had been told previously."

11

Smartt spoke to his supervisor, Rudy, about the matter and the next day, December 11, the two of them approached Judge Kisner. Smartt testified that the three of them spoke in another judge's chambers, and the two "shared the situation" with Judge Kisner. When McLemore asked what was shared, Smartt replied, "All I know [is] I shared the situation with him. I don't know exactly what I shared with him. . . . [But] we did advise him of a conflict." McLemore asked, "The conflict was based on the inconsistent statement Mr. Shaffer said to you?" Smartt responded, "The information I shared here." Smartt testified that Judge Kisner then told the prosecution not what the conflict was but that there was a conflict so Smartt would be off the case and Shaffer would be getting a new attorney.

The following colloquy then occurred between McLemore and Smartt:

"Q. It's unusual to have to go to a Judge and tell them what the conflict is in this jurisdiction, isn't it?
"A. It is. I didn't remember this until the prosecution reminded me. Mr. Rudy reminded me last week. Mr. Shaffer was coming up on his bench trial date. The following week after December 11th. So there was some need to go and talk to a judge as opposed to sending an e-mail to the conflict office.
"Q. Do you remember if Judge Kisner required you to explain what the conflict was?
"A. I think we did explain it to him in some detail. I'm not sure. I think less generic than what I explained here. I think it was more specific.
"Q. Was it at Judge Kisner's request you talked to him about the conflict?
"A. I'm not sure how the conversation went. We had to explain a basis for the conflict."

Rudy testified that he and Smartt went to Judge Kisner because the State objected to Smartt's conflicting off the case, given the closeness of the trial. Rudy then testified as follows:

"A. Yes, it was set for bench trial the very next week. [Smartt] wanted to tell everyone once we realized the situation couldn't go forward.

12

"Q. Because ethically he could not proceed with the case?

"A. Correct. Judge Kisner wanted to know what the conflict was. Most of the time conflicts are we represented a co-defendant, something very specific, fairly unique. [Smartt] and I disclosed to the judge under seal, I don't think it was on the record. I think we just told him what the conflict was. The conflict being the credibility of Dequalyn Shaffer.

. . . .

. . . .

"A. [Rudy:] . . . .

. . . .

"No one is doubting Judge Kisner's v[e]racity when he says I don't remember. That is a concern because if he were to remember what the conflict [was], he would be in a situation where his own attorneys [sic] at one time said we have credibility doubts.

"We don't plan on committing perjury. If he would have to sit in judgment. That's where our grave concern is to him."

Although Judge Kisner did not testify at the recusal hearing with Chief Judge Fleetwood, he put on the record during other proceedings that he "[did] not recall the details of the conversation or even the subject of the concern raised about the conflict originally with Mr. Rudy and Mr. Smartt" (stating he "had no independent recall of the details"). The parties and Chief Judge Fleetwood did not dispute the veracity of those statements at the recusal hearing, and the parties do not do so on appeal.

One concern articulated by Shaffer's attorneys was that something might arise during the remainder of the trial that could trigger Judge Kisner's independent recollection. Another concern was that the proceedings related to the motion to recuse would either trigger his memory or lead him to figure out the nature of the conflict, even absent independent recollection. Smartt stated:

"As the day proceeded on Friday, the whole process of talking about the possibility of conflict with Judge Kisner also gave rise to its own concern about whether or not he

13

could be impartial. We were, I think we were in Judge Kisner's chambers twice, maybe a third time, all together. I think there were numerous emails exchanges. It was very involved Friday. With this particular issue."

After hearing testimony, Chief Judge Fleetwood found the motion for recusal to be premature, stating:

"The test is whether or not a reasonable person aware of all the facts and circumstances would believe that Judge Kisner has an actual prejudice, bias, or hostility toward this defendant. A prejudice, bias, or hostility which is too high to remain constitutionally tolerable.

. . . .

"I believe at this point in time with Judge Kisner's lack of any recall of the events that have been discussed here, there can be no assertion of a bias or prejudice or hostility existing that arise from any extrajudicial provision or actual judicial proceedings.

"This motion, I think, is premature. It's not necessary to rule on a bias that does not exist but has the possibility of existing. It may be at some point in time in the future when the actual circumstances arise where Judge Kisner recalls the events and discussions that have been testified to."

*Judge finds Shaffer guilty of rape*

Shaffer's bench trial resumed on April 8, 2015, and concluded on April 10, 2015. Shaffer testified in his defense. After reviewing the evidence and hearing the testimony Judge Kisner made the following findings:

"The only real question—question element here is the question of whether or not this was done, the sex was consensual or was done because of fear or force. Two very different stories. In these kinds of situations the finder of fact has to look very carefully at the independent facts, in addition to the credibility of the witnesses, the circumstances, the possible biases, and other reasons why someone would be included to tell the truth or not

14

tell the truth while on the stand. . . . In this case the Court did not find the defendant's testimony to be consistent or believable."

The district court found Shaffer guilty of rape.

*The absence of an affidavit*

Before addressing the merits of Shaffer's argument that Kisner should have been disqualified, we address the lack of the affidavit contemplated by K.S.A. 20-311d(a). That statute states:

> "If a party or a party's attorney believes that the judge to whom an action is assigned cannot afford that party a fair trial in the action, the party or attorney may file a motion for change of judge. The motion shall not state the grounds for the party's or attorney's belief. The judge shall promptly hear the motion informally upon reasonable notice to all parties who have appeared in the case. If the judge disqualifies the judge's self, the action shall be assigned to another judge by the chief judge. If the judge refuses to disqualify the judge's self, the party seeking a change of judge may file the affidavit provided for in subsection (b). If an affidavit is to be filed it shall be filed immediately."

Shaffer did not file an affidavit after Judge Kisner declined recusal. The State suggested the parties forego filing an affidavit because Parker was not aware of the underlying facts and the parties were concerned that putting their concerns in writing might increase the risk of potentially tainting Judge Kisner, Parker, or others. Accordingly, the parties agreed that the chief district judge could hear sworn testimony in lieu of an affidavit. Chief Judge Fleetwood tacitly accepted this procedure, asking the parties about their agreement not to file an affidavit, then taking testimony from the members of the Public Defender's Office who had been involved in the chambers conference at which they disclosed the conflict to Judge Kisner.

15

We do not condone this procedure, as the absence of an affidavit makes our task on appeal of determining the controlling facts more difficult. See *State v. Moyer*, 302 Kan. 892, 921-922, 360 P.3d 384 (2015) (finding the absence of an affidavit alleging grounds set forth in the statute precluded the court from deciding the legal sufficiency of the affidavit). Nevertheless, under the plain reading of the statute, Shaffer was not required to file an affidavit in order to seek review. The plain language of K.S.A. 20-311d(a) provides that parties may choose to file an affidavit, but they are not required to do so; if an affidavit is filed, that affidavit "shall be filed immediately." See *State v. Sawyer*, 297 Kan. 902, 908, 305 P.3d 608 (2013). Here, Chief Judge Fleetwood accepted the testimony under oath in lieu of an affidavit.

We do the same. Shaffer has provided a record of sworn testimony for this court to review, distinguishing his case from *Moyer*. Because (1) Shaffer's counsel was not aware of the basis for the conflict, because (2) sworn testimony from the evidentiary recusal hearing has been provided in lieu of an affidavit, and because (3) neither party challenges the absence of an affidavit, we consider the merits of the issue.

*Bases for recusal*

Kansas law provides at least three possible bases for litigants to seek recusal of a trial judge: the Kansas Code of Judicial Conduct, Supreme Court Rule 601B, Canon 2, Rule 2.2 (2015 Kan. Ct. R. Annot. 755); K.S.A. 20-311d(c); and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *State v Hurd*, 298 Kan. 555, 568, 316 P.3d 696 (2013) (citing *Sawyer*, 297 Kan. at 905-06.) Shaffer asserts all three of these.

As explained in *Moyer*:

16

"'The United States Supreme Court has characterized the Due Process Clause as the '"constitutional floor"' on recusal claims, with the ceiling set by "common law, statutes, or the professional standards of the bench and bar." *Caperton* [*v. A.T. Massey Coal Co.*,] 556 U.S. [868,] 889[, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009)] (quoting *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S. Ct. 1793, 138 L. Ed. 2d 97 [1997]). The Court has recognized that Congress and the States are free to '"adopt recusal standards more rigorous than due process requires"' and that generally "the codes of judicial conduct provide more protection than due process requires." *Caperton*, 556 U.S. at 889-90 (quoting *Republican Party of Minn. v. White*, 536 U.S. 765, 793, 122 S. Ct. 2528, 153 L. Ed. 2d 694 [2002] [Kennedy, J., concurring]). Accordingly, "most disputes over disqualification will be resolved without resort to the Constitution." *Caperton*, 556 U.S. at 890.

"'This language suggests that, when all three types of arguments have been raised, the proper analysis for disqualification claims begins with the statutory framework and the Code of Judicial Conduct. Analysis under these provisions may eliminate the need for constitutional analysis, see *Wilson v. Sebelius*, 276 Kan. 87, Syl. ¶ 3, 72 P.3d 553 (2003) (appellate court should avoid making unnecessary constitutional decisions), because a claim based on K.S.A. 20-311d and/or the Code of Judicial Conduct that is resolved in the claimant's favor would end the matter. Also, it is at least theoretically possible that a claim invoking K.S.A. 20-311d and/or the Code of Judicial Conduct may relate to a problem that does not implicate the Due Process Clause. See *Caperton*, 556 U.S. at 876 (kinship recusal generally matter of legislative discretion rather than one of constitutional validity); see also K.S.A. 20-311d(c)(3) (kinship basis for recusal).' *Sawyer*, 297 Kan. at 906-07." 302 Kan. at 920-21.

*Our standard of review*

We exercise de novo review in matters of judicial recusal:

"This court exercises de novo review over whether a trial court judge's recusal is required. See *State v. Sawyer*, 297 Kan. 902, 909, 305 P.3d 608 (2013) ('We judge the adequacy of due process under a de novo standard of appellate review.'); *Kansas Judicial*

*Review v. Stout*, 287 Kan. 450, 459, 196 P.3d 1162 (2008) ('The interpretation of a Supreme Court rule, like the interpretation of a statute, is a question of law.'); *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 385, 22 P.3d 124 (2001) ('When faced with an affidavit of prejudice filed pursuant to K.S.A. 20-311d, this court has unlimited review, and on appeal must decide the legal sufficiency of the affidavit and not the truth of the facts alleged.')." *Moyer*, 302 Kan. at 920.

We review the relevant testimony in the same manner, deciding its legal sufficiency and not the truth of the facts alleged. We find, as detailed below, defendant's attorneys have stated with sufficient specificity the facts and reasons supporting an allegation of bias. See *Hulme v. Woleslagel*, 208 Kan. 385, 493 P.2d 541 (1972).

### *The Code of Judicial Conduct*

The Kansas Code of Judicial Conduct (the Code) located in Kansas Supreme Court Rule 601B, Canon 2 (2015 Kan. Ct. R. Annot. 755) states: "A judge shall perform the duties of judicial office *impartially*, competently, and diligently." Rule 2.11, under this Canon, addresses disqualification: "A judge shall disqualify himself or herself in any proceeding in which the judge's *impartiality* might reasonably be questioned . . . ." Rule 2.11(A) (2015 Kan. Ct. R. Annot. 761). "Circumstances in which a judge's impartiality might reasonably be questioned cover, among others, those in which the judge has a personal bias or prejudice concerning a party or a party's lawyer. Rule 2.11(A)(1)." *Sawyer*, 297 Kan. at 906.

The Kansas Supreme Court has questioned whether the Code provides an independent basis for recusal.

"[T]he preamble to the Code indicates that its purpose is to 'establish[ ] standards for the ethical conduct of judges and judicial candidates.' 2014 Kan. Ct. R. Annot. 752. Pointedly, the Scope section admonishes that '[t]he Code is not designed or intended as a

18

basis for civil or criminal liability' and that it is not 'intended to be the basis for litigants to seek collateral remedies against each other or to obtain tactical advantages in proceedings before a court.' 2014 Kan. Ct. R. Annot. 753." *Moyer*, 302 Kan. at 923.

Although the *Moyer* court recognized that "[a]rguably, the Code was not intended to create a cause of action for litigants," the court noted it had "previously considered the Code as a separate basis for recusal." 302 Kan. at 923. We need not decide here whether the Code was intended to create an independent cause of action for litigants because, unlike in *Moyer*, the statute provides a viable basis for recusal. Further, Shaffer does not show that the Code's provisions are different or more preferable to him, and the State does not contend that the Code fails to provide an independent basis.

*The Statute*

Following the *Moyer* and *Sawyer* paradigm, we begin our analysis with statutory law. K.S.A. 20-311d(c) provides the statutory factors that may be alleged when a litigant argues for judicial recusal. The sole factor alleged here is:

"(5) The party or the party's attorney filing the affidavit has cause to believe and does believe that on account of the personal bias, prejudice or interest of the judge such party cannot obtain a fair and impartial trial or fair and impartial enforcement of post-judgment remedies. Such affidavit shall state the facts and the reasons for the belief that bias, prejudice or an interest exists." K.S.A. 20-311d(c)(5)

We use an objective standard in reviewing the facts alleged in support of recusal.

"'When faced with an affidavit of prejudice filed pursuant to K.S.A. 20-311d, this court has unlimited review, and on appeal must decide the legal sufficiency of the affidavit and not the truth of the facts alleged. [Citations omitted.] We examine whether the affidavit provides facts and reasons pertaining to the party or his or her attorney which, if true, give fair support for a well-grounded belief that he or she will not obtain a

19

fair trial. [Citation omitted.] We determine whether the charges are grounded in facts that would create reasonable doubt concerning the court's impartiality, not in the mind of the court itself, or even necessarily in the mind of the litigant filing the motion, but rather in the mind of a reasonable person with knowledge of all the circumstances. [Citation omitted.]' *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 385, 22 P.3d 124 (2001)." *Sawyer*, 297 Kan. at 908.

*The disclosure of perjury*

We thus examine the facts of record to determine whether they, if true, fairly support a well-grounded belief that Shaffer would not obtain a fair bench trial with Judge Kisner or, as the Code states, whether the judge's impartiality might reasonably be questioned. We focus upon what Judge Kisner was told when Smartt moved to withdraw from the case. Based on the uncontested facts, we find Smartt told Judge Kisner that he knew Shaffer was going to commit perjury. Although Smartt did not use those exact words, under the circumstances, his explanation to Judge Kisner is tantamount to his having told the judge that Shaffer would perjure himself if he testified.

We base this conclusion on two facts. First, Smartt's knowledge of what his client intended to do was certain enough that it motivated Smartt to seek to withdraw from a criminal case that was set for trial the next week—an action that Judge Kisner agreed was warranted. Secondly, our ethical rules do not permit counsel to withdraw in a criminal matter unless counsel *knows* the testimony will be false. The ethical rule regarding candor toward the tribunal states that "[a] lawyer shall not knowingly:  . . . offer evidence that the lawyer knows to be false. . . . A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false." Kansas Rules of Professional Conduct (KRPC) 3.3(a)(3) (2015 Kan. Ct. R. Annot. 601). Thus, in Kansas, counsel's act of moving to withdraw in a criminal case may not be supported by a "reasonable belief" that the client's testimony is false. KRPC 3.3, Comments 8-9. Instead, "[b]ecause of the special protections historically provided

20

criminal defendants," the candor toward the tribunal rule "does not permit a lawyer to refuse to offer the testimony of such a client where the lawyer reasonably believes but does not know that the testimony will be false. Unless the lawyer knows the testimony will be false, the lawyer must honor the client's decision to testify." KRPC 3.3, Comment 9 (2015 Kan. Ct. R. Annot. 603); see Comments 5-8. Smartt and Judge Kisner are deemed to be aware of that standard.

*The objective standard*

Our task is to determine whether the facts would create reasonable doubt concerning the court's impartiality in the mind of a reasonable person with knowledge of all the circumstances. But here, one of those circumstances is the undisputed fact that Judge Kisner did not recall at the time of Shaffer's trial the conversation regarding the nature of the conflict which required Smartt to withdraw, so he could not have been actually biased against Shaffer. The parties do not question Judge Kisner's veracity, nor do we. Chief Judge Fleetwood found this to be the controlling fact and applied a subjective standard—ruling based on what Judge Kisner actually remembered—instead of determining the impact of all the facts on a reasonable person.

We find some guidance in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860-61, 108 S. Ct. 2194, 100 L. Ed. 2d 855 (1988). There, the United States Supreme Court examined 28 U.S.C. § 455 (1982), which provided in relevant part: "(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Because the operative language of this statute is identical to our Code's Rule 2.11(A), the Kansas Supreme Court has relied on federal interpretations of this statute in making the "reasonable person" determination for purposes of judicial disqualification. See *State v. Logan*, 236 Kan. 79, 86, 689 P.2d 778 (1984) (adopting federal standard whether the charge of lack of impartiality is grounded on facts that would create reasonable doubt

21

concerning the judge's impartiality, *not* in the mind of the judge, or even, necessarily, in the mind of the litigant filing the motion, but rather in the mind of a reasonable person with knowledge of all the circumstances). We do the same here.

That the judge's actual state of mind is not the issue is reaffirmed in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 881, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009): "The Court asks not whether the judge is actually, subjectively biased, but whether the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'"

> "In considering a motion to recuse pursuant to section 455(a), 'the initial inquiry is whether a reasonable factual basis exists for questioning the judge's impartiality.' This inquiry is limited to outward manifestations and the reasonable inferences to be drawn from those manifestations. Thus, 'the judge's actual state of mind, purity of heart, incorruptibility, or lack of partiality are not the issue.'

> "The Tenth Circuit has cautioned that 'section 455(a) must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice.' This is so, for 'a judge has as strong a duty to sit when there is no legitimate reason to recuse as [she] does to recuse when the law and facts require.' Nor is section 455(a) intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice. In enacting the statute, Congress expressed concern over its abusive invocation as a means of judge shopping, stating:

>> "'Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice.'" *United States v. Wittig*, No. 03-40142-JAR, 2005 WL 758606, at *1-2 (D. Kan. 2005).

22

See *In re Estate of Hupp*, 178 Kan. 672, 676, 291 P.2d 428 (1955) ("when circumstances and conditions surrounding litigation are of such nature they might cast doubt and question as to the fairness or impartiality of any judgment the trial judge may pronounce, such judge, *even though he is not conscious of any bias or prejudice*, should disqualify himself and permit the case in question to be tried before a judge pro tem"). (Emphasis added.)

The most recent Kansas Supreme Court case addressing recusal similarly applied this objective standard but found no basis for recusal. In *Moyer*, the trial judge's son was an officer who had accompanied the principal investigator to effect Moyer's arrest. After the State endorsed the son as a witness for the jury trial, Moyer moved for the judge's recusal. The district court declined recusal, choosing instead to strike his son as a witness and to issue an order in limine, precluding any mention of his son's name. In analyzing the recusal issue *under the Code*, the court found:

> "Nevertheless, the focus here is not on whether the judge attained the aspirational goal of avoiding any appearance of impropriety when viewed generally. Rather, the focus is on assuring that the defendant obtained a fair trial, free from any bias or prejudice that might flow from the judge's familial relationship with a participant, when viewed from the jury's perspective. Here, the judge's son did not testify and the jury was never informed that the judge had a relative that was involved in the case in any capacity. The probability of prejudice or bias that Moyer claims was intolerably high was actually zero percent with this jury, given that it was unaware of any facts that might lead to such a perception. Accordingly, even if one could discern that the Code suggested that Judge Showalter should have recused, any such error was harmless beyond a reasonable doubt." *Moyer*, 302 Kan. at 925.

*The judge's failure to recall*

*Liljeberg* specifically addressed a judge's forgetfulness, finding it insufficient under 28 U.S.C. § 455(a) to avoid the appearance of partiality:

"Scienter is not an element of a violation of § 455(a). The judge's lack of knowledge of a disqualifying circumstance may bear on the question of remedy, but it does not eliminate the risk that 'his impartiality might reasonably be questioned' by other persons. . . . Moreover, advancement of the purpose of the provision—to promote public confidence in the integrity of the judicial process, [citation omitted]—does not depend upon whether or not the judge actually knew of facts creating an appearance of impropriety, so long as the public might reasonably believe that he or she knew. As Chief Judge Clark of the Court of Appeals explained:

"'The goal of section 455(a) is to avoid even the appearance of partiality. If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists because the judge does not recall the facts, because the judge actually has no interest in the case or because the judge is pure in heart and incorruptible. The judge's forgetfulness, however, is not the sort of objectively ascertainable fact that can avoid the appearance of partiality. *Hall v. Small Business Administration*, 695 F.2d 175, 179 (5th Cir. 1983). Under section 455(a), therefore, recusal is required even when a judge lacks actual knowledge of the facts indicating his interest or bias in the case if a reasonable person, knowing all the circumstances, would expect that the judge would have actual knowledge.' 796 F.2d, at 802."
*Liljeberg*, 486 U.S. at 859-60.

The Supreme Court accepted the district court's finding that, while the case was being tried, the judge did not have actual knowledge of his fiduciary interest in the litigation. It found, however, an ample basis in the record for concluding that an objective

observer would have questioned Judge Collins' impartiality. "Accordingly, even though his failure to disqualify himself was the product of a temporary lapse of memory, it was nevertheless a plain violation of the terms of the statute." *Liljeberg*, 486 U.S. at 861. The Court vacated the judgment based on a violation of § 455(a).

Here, as in *Liljeberg*, Judge Kisner's failure to recall at trial the specifics of the conversation about Smartt's conflict "'is not the sort of objectively ascertainable fact that can avoid the appearance of partiality.'" See 486 U.S. at 860.

The facts in our case do not fall within any category of cases in which, as an objective matter, recusal would traditionally be required:

> "when a judge has a direct, personal, substantial pecuniary interest in the case; when a judge has an indirect financial interest in the case's outcome; when a judge issues a contempt citation in one case and proceeds to try the contempt citation; and, in rare instances, when a litigant donates to a judge's campaign for office. [*Caperton*,]556 U.S. at 876-87." *Sawyer*, 297 Kan. at 909 (discussing due process interests).

Our facts do not allege a judge's financial interest or party relationship in the case, as in *Liljeberg* or *Brown v. Brown*, 103 Kan. 53, 56, 172 P. 1005 (1918); any prosecutorial or accusatorial prior involvement, as in *In re Murchison*, 349 U.S. 133, 136-37, 75 S. Ct. 623, 99 L. Ed. 942 (1955); or any kinship association, as in *Logan*, 236 Kan. at 84-89 or in *Moyer*. But those categories are not exclusive. *Sawyer*, 297 Kan. at 910.

Kansas cases have not addressed whether a judge's knowledge of a defendant's credibility problem may warrant recusal. Other jurisdictions have found that it may. See, *e.g.*, *Lowery v. Cardwell*, 575 F.2d 727, 730 (9th Cir. 1978) (finding the judge should have been disqualified; if defense counsel *during the course of a criminal trial* informs the factfinder of his belief that his client's defense is based on false testimony, "he has, by that action, disabled the fact finder from judging the merits of the defendant's defense");

25

*Butler v. United States*, 414 A.2d 844, 852 (D.C. App. 1980) (finding the trial judge should have recused when defense counsel told him that the government's case can be proved beyond a reasonable doubt and that the defendant intends to commit perjury, noting that "[w]hen the court has regard for the ability and honesty of the lawyer . . . the credibility of the defendant would necessarily suffer in direct proportion to such regard"); *United States v. Roberts*, 20 M.J. 689, 691 (A.C.M.R. 1985) (The court found a military judge abused his discretion by accepting the appellant's request to sit alone without other court-martial judges because this left the judge tainted by the knowledge that appellant's original attorney disbelieved his client's prospective testimony, stating: "The revelation by an appellant's counsel that his client intends to commit perjury is so egregious that it disables the fact finder from impartially judging the merits of appellant's defense."). Our reading of those cases demonstrates that resolution of this issue is factintensive.

*The passage of time*

Here, Smartt's revelation that his client's defense was based on false testimony did not occur during the course of a criminal trial. Instead, when he revealed it a few days before the trial date, the court granted the motion and continued the trial. We have asked whether the intervening passage of time between the date of Smartt's motion to withdraw as counsel on December 11, 2014, and the dates of Shaffer's bench trial, which began on February 26, 2015, and continued on April 8 and April 10, 2015, distinguishes this case from those finding recusal is warranted. We find it does not. Although the passage of time lends credence to Judge Kisner's statement that he had no recollection of the underlying events, no one questions the veracity of that statement.

In *Williams v. Pennsylvania*, 579 U.S. __, 136 S. Ct. 1899, 1906-08, 195 L. Ed. 2d 132 (2016), the United States Supreme Court found a lapse of nearly 30 years to be immaterial. *Williams* found a Pennsylvania Supreme Court justice violated due process by refusing to recuse himself from a habeas proceeding involving a defendant for whom

26

that justice, then a district attorney, had previously authorized prosecutors to seek the death penalty. Ronald Castille, then District Attorney of Philadelphia, had authorized a prosecutor in his office to seek the death penalty against Terrance Williams in 1986. Almost 30 years later, as Chief Justice of the Pennsylvania Supreme Court, Castille participated in deciding whether Williams' fifth habeas petition—which raised a claim unconnected to the prosecution's decision to seek the death penalty—could be heard on the merits or was instead untimely. The majority of the Court held that because Chief Justice Castille made a "critical" decision as a prosecutor in Williams' case, there was a risk that he "'would be so psychologically wedded'" to his previous decision that it would violate the Due Process Clause for him to decide the distinct issues raised in the habeas petition. 136 S. Ct. at 1906-07. Even though the jurist was one of a multimember court and his vote was not decisive, the Court found remand necessary. *Williams*, 136 S. Ct. at 1909-10.

*The importance of credibility in a rape case tried to the court*

This was a rape case where consent was the sole disputed issue, thus a conviction rested primarily, if not solely, on the factfinder's determination of each party's credibility. The factfinder here was the judge. Shaffer testified in his defense. The truthfulness of Shaffer's testimony was an all-important element in his defense, just as the truthfulness of the victim's testimony was the crucial element in the State's case. Judge Kisner determined at trial he did not find Shaffer credible, approximately 4 months after having permitted Smartt to withdraw from the case immediately before the trial date based on Smartt's disclosure that Shaffer was going to commit perjury if he testified. Based on an objective standard, we find the judge's impartiality might reasonably be questioned in these circumstances, compelling his recusal under the Code. Similarly, the facts would create doubt concerning the court's impartiality in the mind of a reasonable person with knowledge of all the circumstances, warranting his recusal under the statute. Therefore, we find the district court erred by failing to require Judge Kisner to recuse.

27

*Shaffer's due process claim*

We reach Shaffer's due process claim because its analysis assists us in determining the appropriate remedy in this case, where no actual bias has been shown. A finding that a judge should have been disqualified because his or her impartiality might reasonably be questioned does not compel the conclusion that the defendant did not receive a fair trial. See *Liljeberg*, 486 U.S. at 859 ("The judge's lack of knowledge of a disqualifying circumstance may bear on the question of remedy, but it does not eliminate the risk that 'his impartiality might reasonably be questioned' by other persons."); 486 U.S. at 862 (raises issue of harmless error).

"We review de novo whether a trial court's ruling violated a criminal defendant's right to due process. [Citation omitted.]" *State v. Robinson*, 293 Kan. 1002, 1030, 270 P.3d 1183 (2012). When a criminal defendant alleges judicial bias, our court applies a two-part test:

"First, the defendant must show that the trial judge has a duty to recuse. Second, the defendant must show actual bias or prejudice that warrants setting aside the conviction or sentence. But bias or prejudice will be presumed when, based on objective standards, the probability of actual bias is too high to be constitutionally tolerable." 293 Kan. at 1032.

Having determined that the trial judge had a duty to recuse, we focus our discussion on whether Shaffer has shown sufficient bias or prejudice to warrant setting aside his conviction.

*Historically, no reversible error absent actual bias or prejudice*

The Kansas Supreme Court has often rejected claims of error in denials of motions for recusal where no actual bias or prejudice has been shown.

28

"Second, even if we were to assume that [the judge] had a duty to recuse himself from this case, Sappington still needs to demonstrate actual bias or prejudice by the judge. This court has often rejected claims of error in denials of motions for change of judge due to a lack of demonstrated prejudice. See, *e.g.*, *Walker*, 283 Kan. at 609; *State v. Reed*, 282 Kan. 272, 279, 144 P.3d 677 (2006); *Griffen*, 241 Kan. at 73. Sappington has not pointed to anything in the record, nor can we find anything there, showing that [the judge] exhibited bias or prejudice at trial or sentencing in the instant case. Therefore, the court did not err in denying Sappington's motion for change of judge." *State v. Sappington*, 285 Kan. 176, 193, 169 P.3d 1107 (2007).

For example, in *Logan*, 236 Kan. at 84-89, the court agreed that even if the judge should have recused himself, there was no showing of actual bias or prejudice and thus no reversible error where the defendant received a fair trial. Similarly, in *State v. Foy*, 227 Kan. 405, 410-12, 607 P.2d 481 (1980), the court found no reversible error when the judge refused to recuse, "[a]lthough he might well have recused," where there was no showing of prejudice in the manner in which he had presided at the trial.

*Recently, risk of actual bias is sufficient*

More recently, however, the Kansas Supreme Court has reversed based on a finding that the mere probability of actual bias is "'too high to be tolerable'" under the Due Process Clause. *Sawyer*, 297 Kan. at 911-12. There, a district judge had chosen to recuse in the defendant's previous assault and battery bench trial; the judge's intemperate demeanor in the defendant's intervening jury trial for lewd and lascivious behavior 2 months later had drawn a stern admonition from the Court of Appeals; and the fact that the criminal threat case, 18 months after the lewd and lascivious jury trial, was tried to the jury instead of to the court was insufficient to ameliorate any earlier need for recusal. Under those circumstances the Supreme Court found reversible error in the failure to recuse because "the probability of actual bias was 'too high to be tolerable' under the Due Process Clause." *Sawyer*, 297 Kan. at 912.

In contrast, in *Moyer*, the Kansas Supreme Court found in its due process analysis that because the jury was unaware that the judge's son had been involved in Moyer's case, one could not objectively declare that the probability of judicial bias was unconstitutionally intolerable. 302 Kan. at 925-26.

In *Williams*, the United States Supreme Court recently held that a due process violation in this context does not require actual bias; instead, an impermissible risk of actual bias is enough.

> "The Court now holds that under the Due Process Clause there is an impermissible risk of actual bias when a judge earlier had significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case.
>
> "Due process guarantees 'an absence of actual bias' on the part of a judge. *In re Murchison,* 349 U.S. 133, 136, 75 S. Ct. 623, 99 L. Ed. 942 (1955). Bias is easy to attribute to others and difficult to discern in oneself. To establish an enforceable and workable framework, the Court's precedents apply an objective standard that, in the usual case, avoids having to determine whether actual bias is present. The Court asks not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, 'the average judge in his position is "likely" to be neutral, or whether there is an unconstitutional "potential for bias."' *Caperton,* 556 U.S., at 881, 129 S. Ct. 2252." 136 S. Ct. at 1905.

We are confident that district court judges in Kansas appreciate the overriding imperative of fairness and that Judge Kisner does so as well. We underscore that the facts show no actual bias or prejudice in this case. Nonetheless, given these recent controlling decisions and the particular facts of this case analyzed above, we find an objective observer with knowledge of all the circumstances would have a reasonable doubt about Judge Kisner's impartiality, and an unconstitutional risk of actual bias is shown by the facts. The State does not argue that Shaffer would have been convicted even absent the

credibility finding, and the difficulty in making that kind of a determination illustrates the reason why the law does not require a showing of actual bias or prejudice in cases such as this. See *Caperton*, 556 U.S. at 883-84. We are therefore compelled to reverse and remand for a new trial.

*Remand for jury trial*

Under these circumstances, we would ordinarily remand the case and Shaffer could proceed with a bench trial to a different judge. But any different judge in the district is likely to read or learn of this opinion and then be tainted by knowledge of facts that would warrant that judge's recusal. Accordingly, we believe the only way to assure Shaffer a fair trial in this highly unusual case is to remand for a jury trial, unless Shaffer properly waives it hereafter.

We find it unnecessary to address Shaffer's claim, raised for the first time on appeal, that his counsel was ineffective for failing to timely secure Judge Kisner's disqualification or his claim that the district court abused its discretion by denying his motion to withdraw his waiver of jury trial.

Reversed and remanded for further proceedings.